UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

|  |  |  |
|---|---|---|
| RON SATIJA, Trustee of the Bankruptcy Estate of David Mowder and Heather Lynette Mowder | : : : : | CASE NO. 1:13-CV-00082 |
| Plaintiff, | : : |  |
| v. | : : | OPINION & ORDER [Resolving Doc. 54] |
| PERMANENT GENERAL ASSURANCE CORPORATION OF OHIO et al., | : : : |  |
| Defendants. | : : |  |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this copyright action, Plaintiff Ron Satija, the trustee of David Mowder's bankruptcy estate, says that David Mowder created a cartoon character known as "the General," that the Estate owns the copyright to the General, and that Defendants[1] have used the character in their advertisements without authorization or permission.[2] The Estate seeks damages for Defendants' alleged infringement, the destruction of all infringing material, and an injunction to prevent Defendants' further use of the General.[3]

Defendants say that although Mowder may have worked with others on developing the General character, he did not create the image.[4] Defendants also say that even if he did, he

---

[1] The complete list of Defendants is Permanent General Companies, Inc., Permanent General Assurance Corporation of Ohio, Permanent General Assurance Corporation, PGA Service Corporation, PGC Holdings Corp., General Automobile Insurance Company, Inc., General Automobile Insurance Services of Ohio, Inc., General Automobile Insurance Services, Inc., General Automobile Insurance Services of Texas, Inc., General Automobile Insurance Services of Louisiana, Inc., and General Automobile Insurance Services of Georgia, Inc. The Court will refer to them collectively as Defendants or Permanent General.

[2] Doc. 1.
[3] Id.
[4] Doc. 22.

Case No. 1:13-CV-00082
Gwin, J.

transferred any copyright rights to Permanent General with a work-for-hire agreement.[5]

Defendants Permanent General now move for summary judgment on their affirmative defense of laches.[6] Defendants say that David Mowder knew about Permanent General's use of the General in their commercials in the early 2000's but unreasonably waited ten years before bringing the lawsuit.[7] Permanent General also say that they have been unduly prejudiced by the delay because pertinent records that would show Mowder's assignment of the copyright have been destroyed and Permanent General have invested substantial funds into the development of the copyright and the General brand.[8]

Plaintiff Satija opposes the motion.[9]

For the reasons that follow, the Court **DENIES** Permanent General's motion for summary judgment.

## I. Factual and Procedural Background

David Mowder says that in 1998 and while living in Northeast Ohio, he created the cartoon character called the General while acting as an independent contractor for Defendants Permanent General.[10] He says he created the character for the limited purpose of helping Permanent General promote their 1998 summer picnic.[11] However, he says that after 1998 and without his permission or authorization, Permanent General began to use the character in their advertisements.[12]

---

[5] *Id.*
[6] Doc. 54.
[7] Doc. 54-1.
[8] *Id.*
[9] Doc. 56.
[10] Doc. 1 at 3, 8 ¶¶ 5, 25.
[11] *Id.* at 9 ¶ 30.
[12] *Id.* at 8, 9 ¶¶ 29, 31-35.

-2-

Case No. 1:13-CV-00082
Gwin, J.

Defendants generally say they contracted with an advertising agency and that an employee of that agency created the character.[13] They also say Mowder assigned any right he had in the design to Saifman Richards, the advertising agency that hired Mowder.[14]

Most relevant to this motion, David Mowder lived in Ohio until December 2000. He then moved to Kansas City.[15] Mowder testified that before moving to Kansas City, he thought he might have seen a Permanent General ad using the General, but he did not know whether he had.[16]

He also testified that he saw ads using the General while living in Kansas City "here and there," and that at some point in the "early to mid" 2000's, Mowder contacted a former colleague at Saifman Richards because he saw an ad using the General.[17] He said that he did not bring a lawsuit until now because he was unaware how extensively Permanent General used the General and because his work colleague told him not to pursue the issue.[18]

Mowder's wife testified that she saw ads using the General while visiting Ohio with David Mowder in the early 2000's and in Kansas City a little later.[19]

Permanent General also registered a version of the General as a trademark on November 21, 2000, and registered subsequent versions in the mid 2000's.[20]

In 2009, and consistent with a retention plan, Saifman Richards destroyed files that contained

---

[13]Doc. 22 at 12-13 ¶¶ 21-28 (Counterclaim).
[14]*Id.*
[15]Although these facts are not in the deposition testimony provided by the parties, both parties say that Mowder moved to Kansas City between December 2000 and October 2009. Doc. 54-1 at 5; Doc 56 at 15.
[16]Doc. 54-4, D. Mowder Dep. at 67:11-13.
[17]*Id.* at 61:21-62:7, 138:3-9.
[18]*Id.* at 61:11-14, 225:23-226:10, 227:4-7.
[19]Doc. 54-9 at 37:20-40:1.
[20]Doc. 54-2.

-3-

Case No. 1:13-CV-00082
Gwin, J.

whatever existing purchase orders with artists associated with the creation of the General.[21]

On January 11, 2013, David Mowder filed this lawsuit for copyright infringement against Permanent General.[22] After a mandatory stay while Mowder reopened his bankruptcy, the Court allowed Ron Satija, the trustee of the bankruptcy estate, to be substituted as the real party in interest and reopened the case.[23]

Permanent General have now moved for summary judgment on their affirmative defense of laches that they say bars all recovery to the Estate.[24] Plaintiff Satija opposes the motion.[25]

## II. Legal Standard

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[26] The moving party must demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[27] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[28] The existence of some doubt as to the material facts is insufficient to defeat a motion for summary

---

[21] Doc. 54-3, Richards Decl. at 2 ¶¶ 11-12.
[22] Doc. 1.
[23] Doc. 28.
[24] Doc. 54.
[25] Doc. 56.
[26] *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008).
[27] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[28] *See* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

-4-

Case No. 1:13-CV-00082
Gwin, J.

judgment.[29] But the Court will view the facts and all reasonable inferences from those facts in favor of the non-moving party.[30]

**B.  Laches**

The affirmative defense of laches requires a defendant to show "'(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.'"[31] Additionally, in general, parties asserting equitable defenses like laches must have clean hands.[32]

In the copyright context, the Sixth Circuit has cautioned district courts to only apply laches in "unusual circumstances."[33] Courts should first determine whether the plaintiff has unreasonably delayed, then determine whether the defendants have been unduly prejudiced.[34]

If the statute of limitations does not bar the lawsuit, district courts may only find a defendant has been unduly prejudiced when "the relief sought by the plaintiffs exceeds what might otherwise be considered just."[35] If the relief does exceed what might otherwise be considered just, laches may defeat relief otherwise permitted by the statute of limitations.[36] The Court summarized:

> In most cases, efforts by a plaintiff to obtain the monetary or injunctive relief authorized by statute within the limitations period provided by the Copyright Act will be allowed to proceed. In those unusual cases, however, when the relief sought will work an *unjust* hardship upon the defendants or upon innocent third parties, the

---

[29] *Matsushita*, 575 U.S. at 586.
[30] *Thomas v. Cohen*, 453 F.3d 657, 660 (6th Cir. 2004) (quoting *Nat'l Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997)).
[31] *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quoting *Herman Miller, Inc. v. Palazzetti Imps. & Exps., Inc.*, 270 F.3d 298, 320 (6th Cir. 2001)).
[32] *See Finnerty v. RadioShack Corp.*, 390 F. App'x 520, 527 (6th Cir. 2010) (quoting *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir. 1979)).
[33] *Chirco*, 474 F.3d at 234.
[34] *Id.*
[35] *Id.* at 235.
[36] *Id.* at 235-36 (finding the destruction of a partially-constructed development that allegedly infringed on a copyrighted design barred by laches even though the Copyright Act authorized that relief if brought within the statute of limitations).

-5-

Case No. 1:13-CV-00082
Gwin, J.

> courts, as a co-equal branch of the federal government, must ensure that judgments never envisioned by the legislative drafters are not allowed to stand.[37]

### III. Analysis

**A.  Presumption of Laches**

This case concerns an allegedly continuing pattern of infringement dating from 1998 to today. David Mowder learned that Defendants produced allegedly infringing advertisements before January 2010 but did not file this lawsuit until January 2013.[38]

When considering whether to apply laches, the Sixth Circuit in *Chirco v. Crosswinds Communities, Inc.* has directed district court's to consider the statute of limitations: "[W]e have affirmed the rule that if the 'statute of limitation has not elapsed, there is a strong presumption that plaintiff's delay in bringing the suit for monetary relief is reasonable. Only rarely should laches bar a case before the . . . statute has run.'"[39] The statute of limitations for copyright cases is three years.[40]

Plaintiff incorrectly argues that the presumption that any delay is reasonable applies to this case because Mowder filed this suit within three years of the showing of an infringing advertisement.[41]

*Chirco* involved a single infringement that occurred for the first time and that the plaintiff

---

[37] *Id.* at 236.

[38] Although Defendants say that Plaintiff Satija seeks damages for allegedly unauthorized use of the General from before January 11, 2010—the last day within the statute of limitations—Plaintiff says he does not. *Compare* Doc. 54-1 at 4 n.4 *and* Doc. 57 at 3, *with* Doc. 59 at 3-4. Accordingly, Plaintiff is limited to seeking damages for allegedly unauthorized use of the General occurring on or after January 11, 2010; an injunction against further use of the General; and destruction of all items bearing the infringing product. *See* Doc. 1 at 12-13.

[39] *Chirco*, 474 F.3d at 233 (quoting *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985)).

[40] 17 U.S.C. § 507(b).

[41] Doc. 56 at 18 ("As in *Chirco*, with respect to acts of copyright infringement committed by Permanent General from January 11, 2010 and January 11, 2013, the Complaint in this case was filed within the statutory period.").

Case No. 1:13-CV-00082
Gwin, J.

discovered within the statutory period.[42] Here, even viewing the facts in the light most favorable to Plaintiff, David Mowder became aware that Defendants were allegedly infringing on his copyright before the statutory period began—*i.e.* before January 11, 2010—even though Defendants allegedly continued to infringe into the statutory period.

Sixth Circuit cases that involve repeated infringement make clear that the presumption of laches depends on when the plaintiff had notice of the infringement.

In *Hoste v. Radio Corporation of America*, the plaintiff had notice in 1965 that an Elvis Presley song had similar lyrics to one she allegedly wrote.[43] She filed a complaint in 1978.[44] The Court of Appeals allowed the district court to apply a presumption of laches because of the plaintiff's delay, but reversed the district court's grant of summary judgment because material issues of fact existed.[45]

Additionally, in *TWM Manufacturing Co. v. Dura Corp.*, a patent case, the Sixth Circuit articulated the laches presumptions for the first time.[46] The Court of Appeals held that "delay in filing suit longer than six years [the statute of limitations for patent suits for damages] after *notice of infringement* creates a presumption of laches. Such a delay is presumed to be unreasonable, and the defendant is presumed to have been prejudiced."[47]

Therefore, the proper question is not whether Plaintiff filed a lawsuit that is timely by the

---

[42] 474 F.3d at 234 (Plaintiffs became aware of the infringement during the statutory period); *see also Tandy Corp.*, 769 F.2d at 366 (same).
[43] 654 F.2d 11, 11 (6th Cir. 1981) (per curiam).
[44] *Id.*
[45] *Id.*
[46] 592 F.2d 346 (6th Cir. 1979).
[47] *Id.* at 348-49 (emphasis added) (citations and footnotes omitted). Although *Chirco* spoke only of a presumption of reasonableness, these cases make clear that there is both a presumption of unreasonableness and a presumption of undue prejudice.

-7-

Case No. 1:13-CV-00082
Gwin, J.

statute of limitations, but rather whether Mowder had notice of the infringement before the statutory period. This makes sense: if the Court were to only ask whether the suit was timely filed to determine whether any delay was reasonable, the laches defense would be redundant to the statute of limitations.

In a copyright case, where a plaintiff files a lawsuit more than three years after receiving notice of alleged infringement and where a defendant asserts a laches defense, the plaintiff must rebut the presumption that the delay was unreasonable and the presumption that the delay prejudiced the defendant.[48] The *Chirco* court defined undue prejudice in the copyright cases as when "the relief sought will work an *unjust* hardship" in light of the relief authorized by the Copyright Act.[49]

In this case, David Mowder knew of Permanent General's alleged infringement more than three years before he filed this lawsuit. Accordingly, to defeat Defendants' laches defense, Satija must rebut the presumption that Mowder's delay is unreasonable and the presumption that the relief sought will work an unjust hardship.

The doctrine of laches in copyright cases is complex. Hopefully, it will become clearer after the Supreme Court considers an appeal from the Ninth Circuit. With the case, the Supreme Court will consider "Whether and under what circumstances laches may bar relief on a claim of copyright infringement brought within the three-year limitations period set out in 17 U.S.C. 507(b)."[50]

The case is similar to this one: a plaintiff discovered actions that allegedly infringed a

---

[48] *Id.*

[49] *Chirco*, 474 F.3d at 236 (emphasis in original).

[50] Br. for United States as Amicus Curiae, *Petrella v. Metro-Goldwin-Mayer, Inc.*, (No. 12-1315), 2013 WL 6157113, at *I.

Case No. 1:13-CV-00082
Gwin, J.

copyright.[51] She filed a lawsuit more than three years after she had notice of the infringement, but claimed only those damages occurring within three years of filing the lawsuit.[52] The Ninth Circuit found that laches barred her claim for damages.[53] In deciding that case, the Supreme Court may provide more guidance on how to apply the laches defense in the copyright context. If the Supreme Court does provide more guidance, this Court may revise this ruling.[54]

**B.      Reasonableness of Delay**

Having decided that Plaintiff Satija must rebut the presumption that Mowder unreasonably delayed in bringing this lawsuit and rebut the presumption of unjust hardship to Defendants, the Court now decides whether David Mowder unreasonably delayed in bringing this lawsuit.

Recall, Mowder testified that he spoke to a former colleague in the "mid to late" 2000's about Permanent General's use of the General. Viewing the evidence in the light most favorable to Plaintiff Satija, Mowder discovered Permanent General's use of the General as late as 2008. Mowder brought this lawsuit in January 2013. Therefore, Mowder had notice of Defendants' alleged infringement more than three years before he brought this lawsuit. Plaintiff Satija must then rebut the presumptions of unreasonable delay and unjust hardship.

Plaintiff Satija has shown a triable issue on the question of whether Mowder unreasonably delayed in bringing this lawsuit.[55] Viewing the evidence in the light most favorable to Plaintiff, Mowder discovered the allegedly infringing commercials in 2008. He says he delayed in bringing

---

[51] *Id.* at *3-6.
[52] *Id.*
[53] *Id.*
[54] Fed. R. Civ. P. 54(b).
[55] The Court does not address the questions of unjust hardship or clean hands because the reasonable delay inquiry resolves this motion.

Case No. 1:13-CV-00082
Gwin, J.

the lawsuit for four years because he was unaware of the extent of Defendants' use of the General and because his work colleague told him not to pursue the issue.

The Court finds that this evidence creates a triable issue as to whether Mowder's delay was unreasonable. Based solely on deposition testimony, the Court cannot conclude that Mowder's delay was unreasonable as a matter of law. At trial, the Court can assess Mowder's credibility as to when he discovered Defendants' alleged infringement and why he did not bring a lawsuit at that time. The jury can decide whether Mowder's delay was unreasonable.[56]

Accordingly, the Court finds that there is a genuine dispute as to a material fact regarding Defendants' affirmative defense of laches, and summary judgment is inappropriate.

### IV. Advisory Jury Verdict

Under Federal Rule of Civil Procedure 39(c), the Court may on its own motion try any issue with an advisory jury, even if the issue is not triable of right by a jury. If the parties consent, the jury may give a binding verdict.[57]

Both parties demand a jury in this case to resolve the claims against each other.[58] The Court finds that submitting the affirmative defense of laches to a jury for an advisory verdict would be appropriate in this case. The jury as a cross-section of the community would advise the Court as to whether David Mowder's delay was unreasonable, and if so whether Defendants have been so unduly prejudiced that the relief Plaintiff Satija seeks would be unjust. The Court would still make a final determination based on the evidence presented at trial. If the parties consent, the Court will

---

[56] *See infra* Part IV.
[57] Fed. R. Civ. P. 39(c)(2).
[58] Doc. 1; Doc. 22.

Case No. 1:13-CV-00082
Gwin, J.

submit the laches issue to the jury for a binding verdict.

## V. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment. The Court also gives notice to the parties that the Court will submit Permanent General's affirmative defense of laches on Plaintiff's claims for damages and injunctive relief to the jury for an advisory opinion, unless the parties consent to a binding jury verdict on laches.

IT IS SO ORDERED

Dated: February 19, 2014

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE